UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS

| | |
|---|---|
| Christopher Babeu, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Apple Inc., a California Company,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Christopher Babeu ("Plaintiff"), by his attorneys alleges upon information and belief, except for allegations pertaining specifically to Plaintiff, which are based on personal knowledge:

**INTRODUCTION**

1. Apple Inc. ("Defendant" or "Apple") is one of the world's largest computer and phone manufacturers, and retailer of movies, television/cable shows, music, books, audio books and music videos (collectively "Digital Content"). Defendant also sells applications ("Apps") which are downloaded by a user to a computer or mobile device for use with Apple devices, including Apple computers, iPads, iPhones, etc. Apps let users perform numerous types of tasks with their Apple devices, as well as play games.

2. Digital Content is available for purchase via Defendant's iTunes platform, ("iTunes"), which can be accessed online and via Apple devices. Apps can be purchased via Defendant's "App Store" (together with iTunes, the "Apple Store").

3. Consumers wishing to purchase and access Digital Content or Apps from Defendant must create an account with Apple by using an email address and password. Upon creation of that account, the email address and password combination is referred to as an Apple ID.

4. Purchased Digital Content and Apps reside on Defendant's platform and servers (the "Apple Platform") unless downloaded by the user to some type of Apple compatible device for off-line use. The reason for this is simple: the file size of most Digital Content and Apps sold these days is so large, especially content like movies and shows, that it would be virtually impossible and/or prohibitively expensive to store that content any other place than on the Apple Platform.

5. Over the course of time, most iTunes account holders will accumulate multiple units of Digital Content and/or Apps, which they will keep stored on the Apple Platform for the above-described reasons.

6. To streamline the Digital Content and App purchasing process, Defendant allows consumers to associate a payment method (i.e., credit card, debit card, etc.) with their Apple ID. Thus, every time consumers purchase Digital Content or Apps, the payment is charged automatically without consumers having to re-enter their payment method information each time they make a purchase.

7. Should a payment for Digital Content fail to be processed at any time, whether because the form of payment has expired or the charge has been rejected by a bank, Defendant will immediately seize all of that consumer's Digital Content and Apps and prevent any access to it, including the content that the consumer attempted to purchase before the payment method turned out to be invalid, regardless of the amount of debt owed or the number of units of already-purchased Digital Content and Apps that resided on the Apple Platform. Thus, if payment for a $4.99 purchase is rejected for whatever reason, Defendant will seize all purchased content even if the amount paid for the seized content was $100 or $10,000. Upon seizure, consumers are prevented from viewing or listening to the Digital Content and/or using any of the Apps.

8. Defendant's actions are a breach of its Apple Media Services Terms and Conditions

(the "Apple Agreement"). Specifically, pursuant to the Apple Agreement, Defendant agrees that if a payment method becomes invalid, whether because it expired or because of insufficient funds, that it will *only* prevent consumers from (i) making new purchases and (ii) updating their Apps. In fact, no part of the Apple Agreement allows Defendant to unilaterally seize, without a court order or any type of due process to consumers, all Digital Content and Apps owned by Apple customers whose payment method becomes invalid at any point in time.

9. In fact, the law is clear that before a creditor can seize any assets to satisfy a debt, it must either (i) have a legal right to do so, such as when the assets serve as collateral pursuant to a security agreement signed by both parties, or (ii) it must obtain a court order if the debt is unsecured, such as Defendant was required to do here since it is, without a doubt, an unsecured creditor.

10. To add insult to injury, Defendant even seizes the content that triggered the debt. In other words, Apple tries to collect on a debt for which the debtor received no property or benefit, thereby by effectively making the complained of debt illusory.

11. Defendant's breach caused Plaintiff and members of the Class to suffer an injury, to wit, Defendant illegally seized Digital Content and Apps owned by them without court order, and without providing them any type of due process.

## JURISDICTION AND VENUE

12. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

13. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"

14. The aggregate amount in controversy is at least $5,000,000.

15. Minimal diversity is met because Plaintiff was a citizen of Middlesex County, Massachusetts at all relevant times and Defendant is a citizen of California.

16. Venue is proper because Plaintiff, at all relevant times, resided, and many Class (as

defined below) members still reside, in this District and Defendant does business in this District.

17. A substantial part of events and omissions giving rise to the claims occurred in this District.

18. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within Massachusetts.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23

20. The proposed class is defined as:.

> All persons, in the State of Massachusetts during the applicable statute of limitations and through class certification and trial, whose Digital Content and/or Apps purchased from Defendant were seized for any period of time due to Defendant's determination that such persons' payment method was invalid (the "Class").

21. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

22. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

23. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

24. Plaintiff's claims are typical of the claims of the Class in that they, like all Class

members, had Digital Content and Apps seized in violation of the Apple Agreement.

25. Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that it unlawfully seized property owned by them and prevented any access to it. Furthermore, the factual basis of Defendant's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

26. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

27. Among the questions of law and fact common to the Class are whether Defendant:

    a. Violated the Apple Agreement by seizing Digital Content and Apps owned by consumers whose method payment was determined to have become invalid, even though Defendant had agreed pursuant to the Apple Agreement to only prevent consumers from making new purchases or update Apps in connection with such an event.

    b. Breached the covenant of good faith and fair dealing by misrepresenting what the consequences would be to a consumer's already-purchased Digital Content and Apps in the event that such consumer's payment method was deemed invalid; and

    c. Injured Plaintiff and the Class members through its conduct and, if so, the proper measure of damages.

28. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against large retail institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

29. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. Moreover, given that Defendant's seizure of the Digital Content and Apps due to an invalid payment method was carried out in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

30. Even if the Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## PARTIES

31. Plaintiff Babeu was a citizen of Massachusetts at all relevant times.

*32.* Starting around 2008, Plaintiff began purchasing Digital Content and Apps from the Apple Store. As of July 2016, Plaintiff had amassed the following collection of Digital Content and Apps, which he maintained on the Apple Platform: 134 Movies, 258 Shows, 3,371 Songs, 97 Music Videos, 135 Books, 3 Audio Books, 392 iPad Apps and 493 iPhone Apps. ***The collective purchase price paid for these items was in excess of $10,000.***

33. On or about July 16, 2016, Plaintiff made an in-app purchase of Bucket of Gems, and purchased a TIDAL HIFI subscription and the song Sucker for Pain, all from the Apple Store,

which totaled $39.52.  The screenshot below, which captures a consumer facing portion of the Apple Store , shows those purchases.



34. At the time he made these purchases, Plaintiff believed the payment method he had on file with Defendant was valid.  Several days after the purchase, Plaintiff learned that his bank declined payment.  At such time, Defendant immediately seized all of Plaintiff's already-purchased Digital Content and Apps without a court order and/or without any legal right to do so.  As of the date of this Complaint, and after many conversations between Plaintiff and Apple about its unfair seizure of Plaintiff's personal property over the years, Defendant has refused to return any of Plaintiff's thousands of units of Digital Content and Apps he purchased for valuable consideration.

35. Defendant Apple Inc. is a California corporation with a principal place of business in Cupertino, California in Santa Clara County and is a citizen of California.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

36. Through iTunes, consumers can buy and subsequently access their Digital Content, in a variety of ways via a smart phone, computer or tablet. Consumers can also access their Digital Content by using a palm-sized, plastic black box manufactured by Defendant called Apple TV (collectively, with smart phones, computers, and tablets, "Apple Devices").

37. Through the App Store, consumers purchase Apps, which can be accessed through a host of Apple Devices. In addition, Plaintiff spent over $6,000 on Apple Devices for the primary purpose of listening to, viewing, or otherwise using his Digital Content and Apps.

38. A movie sold by Defendant on iTunes can sell for up to approximately $19.99. Cable and television shows sold by Defendant usually sell for around $3.99 per episode, and for a much higher fee of around $29.99, Defendant will offer to sell an entire season of a show. Defendant sells music by the song for around $1.29, and by the album for around $11.99.

39. Apps sold on the App Store can range anywhere from free to hundreds of dollars each. In addition, some apps allow for "in-app purchases," which allow consumers to buy certain features or enhancements to the App that further increase the price paid for that specific App. Thus, considering what Defendant charges for Digital Content and Apps, it is no surprise that just a handful of purchases can easily cause consumers to accumulate several hundred dollars-worth of Digital Content and Apps, or even thousands, over the course of time.

40. As discussed above, upon creating an Apple ID, a consumer can use that ID to purchase Digital Content and Apps and/or access already purchased Digital Content and Apps via Apple Devices. In addition, Defendant gives consumers the ability to associate a payment method with their Apple ID so that consumers need not input their payment information each time they make a purchase.

41. Because purchased Digital Content and Apps are stored on the Defendant's servers, consumers can use their Apple ID across different Apple Devices, including those not belonging to

them, to access their Digital Content and Apps. This ability undoubtedly drives consumers to keep their Digital Content and Apps stored on the Apple Platform versus downloading to a device and/or a stand-alone hard drive.

42. Defendant, like most sophisticated technology manufacturers and retailers, dictates the terms and conditions applicable to the use of its services and the purchase of its products. On its website, Defendant makes available the Apple Agreement, which it states "create[s] a contract between you and Apple . . . ."

43. Below is a screen shot of the Apple Agreement's terms and conditions relating to payments for Digital Content and Apps purchased from Defendant. Regarding the payment process, the Apple Agreement states as follows:

> Apple will charge your selected payment method (such as your credit card, debit card, gift card/code, or other method available in your Home Country) for any paid Transactions, including any applicable taxes. If you have also added it to your Apple Wallet, Apple may charge your selected payment method in Apple Wallet using Apple Pay. You can associate multiple payment methods with your Apple ID, and you agree that Apple may store and charge those payment methods for Transactions. Your primary payment method appears at the top of your account settings payments page.
>
> If your primary payment method cannot be charged for any reason (such as expiration or insufficient funds), you authorize Apple to attempt to charge your other eligible payment methods in order from top to bottom as they appear on your account settings payments page. If we cannot charge you, you remain responsible for any uncollected amounts, and we may attempt to charge you again or request that you provide another payment method. If you pre-order Content, you will be charged when the Content is delivered to you (unless you cancel prior to the Content's availability). In accordance with local law, Apple may automatically update your payment information regarding your payment methods if provided such information by the payment networks or your financial institutions. For more details about how Transactions are billed, please visit http://support.apple.com/HT201359. All Transactions are final. Content prices may change at any time. If technical problems prevent or unreasonably delay delivery of Content, your exclusive and sole remedy is either replacement of the Content or refund of the price paid, as determined by Apple. From time to time, Apple may suspend or cancel payment or refuse a refund request if we find evidence of fraud, abuse, or unlawful or other manipulative behavior that entitles Apple to a corresponding counterclaim. Terms related to store credit and gift cards/codes are available here: https://www.apple.com/legal/internet-services/itunes/giftcards/.

44. Additional information about how Defendant will address an invalid payment method can be found by clicking through the first hyperlink that appears in the terms and conditions shown above, which is preceded by the language, "For more details about how Transactions are billed, please visit . . ." The screenshot below provides the terms and conditions accessed at that

hyperlink.

> **If none of your payment methods can be charged**
>
> If a purchase can't be charged to any of your payment methods, your account has a negative balance. You can't buy more items or update your apps until you *update your payment method*.
>
> **Learn more**
> - Cancel a subscription.
> - Add, update, or remove payment methods.
> - Check your Apple ID balance.
>
> Information about products not manufactured by Apple, or independent websites not controlled or tested by Apple, is provided without recommendation or endorsement. Apple assumes no responsibility with regard to the selection, performance, or use of third-party websites or products. Apple makes no representations regarding third-party website accuracy or reliability. Contact the vendor for additional information.

45.     Thus, as can clearly be seen in the adhesion contract drafted by Defendant's own attorneys, the only warning provided to the consumer regarding the consequences of a payment method becoming invalid (and/or Defendant is owed any monies) is: **"*you can't buy more items or update your apps*** until you update your payment method." (emphasis added).

46.     In fact, nowhere in the Apple Agreement is there any mention that Apple can unilaterally seize all Digital Content and Apps owned by consumers in the event their payment method becomes invalid and/or they owe Apple a debt.

47.     Nevertheless, and despite the Apple Agreement's clear and unequivocal language of how it is going to handle invalid payment methods and a negative balance, Defendant has routinely seized purchased Digital Content and Apps residing on the Apple Platform, even when the purchase price paid for such content is substantially (even exponentially) greater than any amounts owed it. In fact, Apple's seizure of over $10,000 worth of Plaintiff's content over an outstanding balance of $39.52 is unconscionable.   Remarkably, Defendant also seized the Digital Content that triggered the negative balance, thereby making any debt owed it illusory.

## CLAIMS FOR RELIEF
### FIRST COUNT

## BREACH OF CONTRACT

### (On Behalf of Plaintiff and the Class members)

48. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49. The Apple Agreement provides that, in the event that a purchase cannot be charged to an Apple customer's payment method, whether because the method has expired or due to insufficient funds, Defendant's sole remedy is to suspend a customer's ability to (i) make new purchases from the Apple Store and (ii) update their Apps.

50. The Apple Agreement, an adhesion contract drafted by Defendant's own attorneys, is completed devoid of any term or condition that grants Apple the right to unilaterally seize all Digital Content and Apps owned by consumers, without a court order or due process of any type, in the event their payment method becomes invalid and/or they owe Apple a payment.

51. Defendant's breach of the Apple Agreement caused Plaintiff and members of the Class to suffer an injury, to wit, they were prevented from using and enjoying Digital Content and Apps owned by them.

## SECOND COUNT

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Class members)

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein

53. Plaintiff, on behalf of himself and the Class members, brings a claim for breach of the implied covenant of good faith and fair dealing

54. Plaintiff reasonably construed the Apple Agreement and expected that after purchasing his Apple Digital Content and Apps, even if at some point his payment method became invalid or he incurred a debt to Apple, he would be able to continue to watch, listen to, or otherwise

use his already-paid-for Digital Content and Apps. He did not expect that in such an instance, Apple would seize and/or prevent him from enjoying his previously purchased and paid-for Digital Content and/or Apps.

55. In direct violation of Plaintiff's reasonable expectations, Apple did intentionally, illegally, and unfairly seize Plaintiff's previously purchased Digital Content and Apps, which destroyed Plaintiff's ability to receive the benefits of the Apple Agreement and violated his reasonable expectations; thus, constituting a breach of the implied covenant of good faith and fair dealing under the contract.

## THIRD COUNT

### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Class members)**

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. Plaintiff, on behalf of himself and the Class members, brings a claim for unjust enrichment.

58. Defendant was unjustly and unlawfully enriched by seizing valuable Digital Property and Apps owned by Plaintiff and the Class members in direct violation of the Apple Agreement.

59. The foregoing did not occur by happenstance of circumstances outside of Defendant's control. Plaintiff believes and is informed that Defendant maintains the practice of depriving customers of previously purchased Content as a discreet corporate policy aimed to unfairly and unlawfully rectify declined payments.

60. Defendant has thereby violated fundamental principles of justice, equity and good conscience and should be required to disgorge its unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding monetary damages, including but not limited to any statutory, compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F. providing for any and all equitable monetary relief the Court deems appropriate;

G. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H. awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

I. awarding pre- and post-judgment interest to the extent the law allows; and

J. providing such further relief as this Court may deem just and proper.

**TRIAL BY JURY IS DEMANDED**

December 6, 2021

    Respectfully submitted,
    **MIRABELLA LAW LLC**

    */s/ Erica C. Mirabella*
    Erica C. Mirabella (BBO# 676750)
    *erica@mirabellallc.com*
    132 Boylston Street, 5th Floor
    Boston, Massachusetts 02116

Telephone: (617) 580-8270
Facsimile: (617)583-1905

**REESE LLP**
Michael R. Reese (*Pro hac vice* forthcoming)
*mreese@reesellp.com*
Carlos F. Ramirez (*Pro hac vice* forthcoming)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*