UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| CHRISTOPHER BABEU, *individually and on behalf of all others similarly situated*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| | | Civil Action No. 21-CV-11967-AK |
| v. | | |
| APPLE, INC., | | |
| Defendant. | | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiff Christopher Babeu ("Babeu") initiated this action on behalf of himself and all others similarly situated against Defendant Apple, Inc. ("Apple"), alleging various contract-related claims and unjust enrichment. Apple filed a motion to dismiss the action in its entirety. [Dkt. 20]. For the following reasons, that motion [Dkt. 20] is **GRANTED**.

**I.   Background**

Unless otherwise noted, the facts are presented as alleged in Babeu's complaint. [See Dkt. 1 ("Complaint")]. Babeu began purchasing digital content, including songs, movies, applications, music videos, television shows, books, and audiobooks, from Apple in 2008. [Id. at ¶ 32]. Babeu spent over $10,000 on those purchases between 2008 and 2016. [Id.]. On July 16, 2016, Babeu tried to purchase digital content from Apple totaling $39.52, which was charged to the payment method he had on file. [Id. at ¶¶ 33, 34]. Babeu believed the payment method stored by Apple was valid, but days later he learned that his bank declined the payment. [Id. at

1

¶ 34]. Apple then seized all of Babeu's "already-purchased" digital content from his devices. [Id.].

Any customer attempting to purchase digital content from Apple must review and agree to the Apple Media Services Terms and Conditions ("Terms and Conditions"). [Id. at ¶¶ 8, 42]. The parties disagree as to whether the 2016 or the 2021 Terms and Conditions apply here. [See Dkt. 21 at 1]. Babeu appears to rely on the 2021 Terms and Conditions in his complaint, while Apple maintains that the 2016 Terms and Conditions apply because that agreement was in effect at the time of the alleged breach. Babeu claims that the 2021 Terms and Conditions outline what Apple may do when a customer's payment fails, and Apple did not act accordingly. As alleged, the 2021 Terms and Conditions state that "Apple will charge [the user's] selected payment method" for "any paid Transactions." [Complaint at ¶ 43]. When a selected payment method cannot be charged "for any reason (such as expiration or insufficient funds)," Apple may "attempt to charge [the user's] other eligible payment methods." [Id.]. If those other payment methods cannot be charged, users "remain responsible for any uncollected amounts, and [Apple] may attempt to charge [the user] again or request that [the user] provide another payment method." [Id.]. The 2021 Terms and Conditions then hyperlink to another page detailing how transactions are billed. [Id.]. That hyperlinked website explains that "[i]f a purchase can't be charged to any of [the user's] payment methods," the "account has a negative balance" and the user "can't buy more items or update [their] apps until [they] update [their] payment method." [Id. at ¶ 44]. Babeu claims that the 2021 Terms and Conditions state nothing about the seizure of previously purchased digital content.

Both the 2016 and the 2021 versions of the Terms and Conditions provide that all transactions made through Apple platforms are governed by California law.[1] Specifically, the 2016 Terms and Conditions state that "[a]ll transactions . . . are governed by California law, without giving effect to its conflict of law provisions," and the 2021 Terms and Conditions provide that the parties' agreement, the relationship between the user and Apple, and all transactions and services "shall be governed by the laws of the State of California, excluding its conflicts of law provisions."  [Dkt. 22-1 at 10, 15, 27; Dkt. 22-2 at 9, 13].

Babeu claims that Apple has beached its contract ("Count I"), violated the implied covenant of good faith and fair dealing ("Count II"), and been unjustly enriched ("Count III") by seizing all of Babeu's previously purchased digital content when his $39.52 payment failed to go through.  [Complaint at ¶¶ 48-60].  Despite the choice-of-law provisions in the 2016 and 2021 Terms and Conditions, Apple's motion to dismiss relies on Massachusetts law to argue that Babeu has failed to state a plausible claim to relief.  [See generally Dkt. 21].  Babeu responds that California law governs the parties' dispute pursuant to the choice-of-law provision in the Terms and Conditions.  [Dkt. 27 at 5].  Apple does not dispute Babeu's choice-of-law argument.[2] Rather, Apple contends that, under California law, Babeu's claims are barred by the statutes of

---

[1] Both Terms and Conditions also provide that the customer (Babeu) agrees that "exclusive jurisdiction" for any "claim" or "dispute" with Apple relating to the Terms and Conditions resides in the courts of California.  [Dkt. 22-1 at 10, 15, 27; Dkt. 22-2 at 13].  Babeu has ignored this provision despite arguing that California law applies to the parties' dispute.

[2] Apple explains that it premised its motion to dismiss on Massachusetts law because it presumed for several reasons that Babeu intended to ask the Court to ignore the choice-of-law agreement.  [Dkt. 28 at 1 n.1].  First, Babeu ignored the venue provision in the 2016 and 2021 Terms and Conditions, which require any suit to be filed in California.  [Id.].  Second, the complaint defines the putative class by referencing Massachusetts.  [Id.].  Third, California's statutes of limitations bar Babeau's claims.  [Id.].  While the Court is not entirely satisfied with Apple's explanation regarding its failure to argue, from the outset, that California law applies, Babeu has claimed that California law applies, Apple does not disagree, and Apple has properly set forth arguments for dismissal based on California law in its reply to Babeu's opposition. The Court considers Apple's arguments regarding California law accordingly.

limitations. [Dkt. 28 at 2-4]. Apple also maintains that Babeu has failed to state a plausible claim to relief even if the Court did apply California law. [Id. at 4-10].

**II.     Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it," Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014), though the Court may also consider "official public records" and "documents sufficiently referred to in the complaint," Bingham v. Massachusetts, 616 F.3d 1, 3 n.1 (1st Cir. 2010). Where the complaint's "factual allegations are expressly linked to—and

admittedly dependent upon—a document," such as a contract, "that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

### III.  Discussion

The Court agrees that California law governs Babeu's claims.  Despite the fact that Apple initially applied Massachusetts law when moving to dismiss the suit, the parties do not genuinely disagree as to whether California law applies, and it "is well-settled law that parties may select by agreement the body of law that will govern their contractual disputes."  OrbusNeich Med. Co., Ltd. v. Bos. Sci. Corp., 694 F. Supp. 2d 106, 113 (D. Mass. 2010) (citing Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir. 1993)).  Unless that choice of law "violates established public policy or bears no reasonable relationship to the contract," the parties are bound by that choice. Id.; see Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir. 1993) (noting that Massachusetts courts "routinely enforce choice-of-law provisions").  Babeu even states that "there is no public policy against application of the [California] choice of law," "Apple is headquartered in California," and "there is a substantial relationship between California and the contract."  [Dkt. 27 at 5]. Apple does not disagree.  [See generally Dkt. 28].  The Court has not identified any reason not to apply California law as requested.

The crucial question, then, is whether the choice-of-law provisions in the Terms and Conditions require the Court to apply California's statutes of limitations to Babeu's claims.  See Stanley v. CF-VH Assocs., 956 F. Supp. 55, 57 (D. Mass. 1997) ("Generally, a federal court in a diversity case applies the statute of limitations that would be applied by the forum state."). Apple contends that, pursuant to the choice-of-law agreement, California's statutes of limitations govern, and Babeu does not argue otherwise.  California's statutes of limitations for breach of

5

contract and a contract-based breach of the implied covenant of good faith and fair dealing are four years.[3] Prof'l Collection Consultants v. Lauron, 214 Cal. Rptr. 3d 419, 425 (Cal. Ct. App. 2017) (citing Cal. Civ. Proc. Code § 337); Frazier v. Metro. Life Ins. Co., 214 Cal. Rptr. 883, 889 (Cal. Ct. App. 1985) (citing Cal. Civ. Proc. Code § 337). California's statute of limitations for unjust enrichment is three years. Fed. Deposit Ins. Corp. v. Dintino, 84 Cal. Rptr. 3d 38, 50 (Cal. Ct. App. 2008) (citing Cal. Civ. Proc. Code § 338) (noting that "an unjust enrichment or quasi-contract action in the form of a common count to recover money or other benefit obtained by mistake is governed by the three-year statute of limitations for actions based on fraud or mistake"). Massachusetts, on the other hand, has a six-year statute of limitations for all three claims. Spears v. Miller, No. 1683, 2006 WL 2808145, at *1 (Mass. App. Ct. Sept. 26, 2006) (citing Mass. Gen. Laws ch. 260, § 2); see Callahan v. Wells Fargo & Co., 747 F. Supp. 2d 247, 252 (D. Mass. 2010) (citing Mass. Gen. Laws ch. 260, § 2). Babeu alleges Apple violated the Terms and Conditions when it seized his digital content "[s]everal days" after his failed purchase attempt on July 16, 2016. [Complaint at ¶¶ 33, 34]. He filed suit in the District of Massachusetts on December 6, 2021. If the California statutes of limitations govern Babeu's claims, they are time-barred, and the Court need not evaluate the parties' arguments regarding breach and the conscionability of the various contract terms.

Some courts treat statutes of limitations as procedural in nature, while others treat statutes of limitations as substantive in nature, which can affect the reach of a contractual choice-of-law provision. See Sun Oil Co. v. Wortman, 486 U.S. 717, 736 (1988) (Brennan, J., concurring) ("Statutes of limitations, however, defy characterization as either purely procedural or purely

---

[3] A tort-based claim for breach of the implied covenant of good faith and fair dealing is subject to a two-year statute of limitations in California. Love v. Fire Ins. Exchange, 271 Cal. Rptr. 246, 249 n.4 (Cal. Ct. App. 1990) (citing Cal. Civ. Proc. Code § 339).

substantive."). Whether contractual choice-of-law provisions apply only to substantive law or to substantive and procedural law is also state-dependent. See, e.g., OrbusNeich, 694 F. Supp. 2d at 113 (noting that, "[a]s a general matter . . . contractual choice of law provisions apply only to issues of substantive law and do not govern questions of procedural law that may arise in a contractual dispute" (citations omitted)); Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc., 46 Cal. Rptr. 2d 33, 39 (Cal. Ct. App. 1995) ("Although statutes of limitations may be viewed as procedural rather than substantive in some contexts, the choice-of-law clause in this case does not make a distinction along those lines."). The Court, however, need not delve further into these complicated issues. Under both California and Massachusetts principles of contract interpretation, choice-of-law provisions such as the ones at issue here apply to procedural *and* substantive law, thereby requiring the forum court to apply the statutes of limitations of the state named in the choice-of-law provision—in this case, California.

Courts in the District of Massachusetts have evaluated the scope of contractual choice-of-law provisions that contain language regarding conflicts of law, similar to the provisions at issue here. See, e.g., OrbusNeich, 694 F. Supp. 2d at 112-14. One such court evaluated the significance of the phrase "without regard for the conflicts of law provisions" in a contractual choice-of-law provision that stated that the "Agreement is governed by the Laws of the Commonwealth of Massachusetts, USA, without regard for the conflicts of law provisions." Id. at 113-14. That court applied Massachusetts law to interpret the contract and found that such language "unambiguously expresses the parties' intention to exclude consideration of *all* conflicts of law provisions in determining which law to apply to various aspects of a dispute arising" under the parties' agreement, "without regard to their substantive or procedural nature." Id. To hold otherwise would "contradict[] the plain language of the choice of law provision."

7

Id. at 114. As such, the court held that the statute of limitations of the state named in the choice-of-law provision applied to the plaintiff's claims. Id. California courts have also found that choice-of-law provisions require the forum court to use the statutes of limitations of the state named in the provision. See, e.g., Hambrecht, 46 Cal. Rptr. 2d at 38-39. Indeed, California courts have found that the applicable statute of limitations is governed by the state named in the choice-of-law provision even where that provision does not contain language such as "without regard for the conflicts of law provisions." See id. at 38 (noting that "[b]oth the technical and popular meanings of 'laws' refer to a jurisdiction's statutory law, of which the statutes of limitations are a part" and applying the statute of limitations of the state named in the contractual choice-of-law provision).

      Both the 2016 and 2021 Terms and Conditions require the Court to apply the California statutes of limitations to Babeu's claims. The 2016 Terms and Conditions state that "[a]ll transactions . . . are governed by California law, without giving effect to its conflict of law provisions." [Dkt. 22-1 at 10, 15, 27]. The 2021 Terms and Conditions provide that all transactions and services "shall be governed by the laws of the State of California, excluding its conflicts of law provisions." [Dkt. 22-2 at 9, 13]. Under California's interpretation of contractual choice-of-law provisions, the specific references to "California law" and "the laws of the State of California" in the Terms and Conditions require the Court to apply California's statutes of limitations. See Hambrecht, 46 Cal. Rptr. 2d at 38. And, pursuant to a Massachusetts interpretation of the contractual choice-of-law provisions, the inclusion of language regarding conflicts of laws—"without giving effect to its conflict of law provisions" and "excluding its conflicts of law provisions"—requires the Court to apply California's statutes of limitations. See OrbusNeich, 694 F. Supp. 2d at 114. Babeu alleges Apple's unlawful conduct occurred in

July 2016.  [See Complaint at ¶¶ 33, 34].  He filed this suit in December 2021, more than five years later.  All of Babeu's claims are barred by California's three- and four-year statutes of limitations for unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing.  The Court therefore grants Apple's motion to dismiss, and the action is dismissed in its entirety.  Because Babeu's claims are time-barred, the Court need not evaluate the parties' remaining arguments and denies Babeu's request for leave to amend his complaint [see Dkt. 27 at 16], as amendment would be futile.

**IV.    Conclusion**

For the foregoing reasons, the defendant's motion to dismiss [Dkt. 20] is **GRANTED**.

**SO ORDERED.**

Dated: August 22, 2022                              /s/ Angel Kelley
                                                                   Hon. Angel Kelley
                                                                   United States District Judge